UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

CARMINE P. AMELIO,

                                Debtor-Appellant,

      -against-

DEBORAH J. PIAZZA,

                                Trustee-Appellee.

<u>MEMORANDUM DECISION
AND ORDER</u>

19 Civ. 5944 (GBD)
19 Civ. 7091 (GBD)

------------------------------------------------------------ x

GEORGE B. DANIELS, United States District Judge:

*Pro se* Debtor-Appellant Carmine P. Amelio initiated the above-captioned matters before this Court, appealing decisions of Chief Bankruptcy Judge Cecelia G. Morris ("Chief Judge Morris"). Debtor-Appellant appeals three orders of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). (*See* 19 Civ. 5944 (GBD) ("Appeal 1"); 19 Civ. 7091 (GBD) ("Appeal 2").) Specifically, Debtor-Appellant appeals Chief Judge Morris's (1) March 22, 2019 order (the "March Order") issuing an order to show cause and restraining order, among related relief, (*see* Appeal 1); (2) June 3, 2019 order (the "June Order") issuing a preliminary injunction and temporary restraining order ("TRO"), among related relief, (*see id.*); and (3) July 22, 2019 order (the "July Order") order issuing a TRO and turnover directive, (*see* Appeal 2). Chief Judge Morris's orders are hereby AFFIRMED.

### I.    FACTUAL BACKGROUND

Debtor-Appellant petitioned for bankruptcy on September 1, 2017. (Appeal 1, Debtor/Appellant's Opening Br. ("Appeal 1 Debtor-Appellant's Br."), ECF No. 10, ¶¶ 1.) Nearly eight months later, on April 30, 2018, the Bankruptcy Trustee ("Trustee-Appellee") filed a motion to dismiss pursuant to 11 U.S.C. §§ 1307(c) and 109(e), arguing (1) unreasonable delay by Debtor-

Appellant that was prejudicial to his creditors; (2) that Debtor-Appellant failed to file objections to the Trustee-Appellee's proofs of claim that evidenced the value of his properties;[1] and (3) that even if Debtor-Appellant did object to the proofs of claim, such objections would be futile because the proofs of claim demonstrated a total debt of approximately four million dollars, making Debtor-Appellant ineligible for Chapter 13 protection. (*Id.* ¶ 11.)  On May 22, 2018, the Bankruptcy Court entered an order converting the case from a Chapter 13 to Chapter 7 proceeding, finding that it was "in the best interests of creditors and the estate." (*Id.* ¶ 14.) Appellant moved twice to vacate the conversion order, and both were denied. (*Id.* ¶¶ 15–18, 23.)

Subsequently, Trustee-Appellee commenced an adversary proceeding against Debtor-Appellant, seeking, *inter alia*, a preliminary and permanent injunction enjoining the Debtor-Appellant from taking certain actions without prior written permission from the Bankruptcy Court. (*See* Bankruptcy Adversary Proceeding No. 19-01089 (CGM) ("Adversary Proceeding").)

### A.  The March 22, 2019 Order to Show Cause with TRO and Related Relief.

The Bankruptcy Court held a hearing on Trustee-Appellee's motion on March 21, 2019. After reviewing the evidence, including the fact that Debtor-Appellant had initiated a state court lawsuit against an attorney for the Trustee-Appellee, the Bankruptcy Court found that the Trustee-Appellee demonstrated good cause for issuance of a TRO. (*See* Adversary Proceeding, ECF No. 9 at 2.)

The following day, on March 22, 2019, Chief Judge Morris issued an order to show cause at an upcoming hearing as to why the Bankruptcy Court should not provide relief pursuant to

---

[1] "A proof of claim is a written statement setting forth a creditor's claim . . . [and] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(a), (f).

11 U.S.C. §§ 105[2] and 362(a)(3)[3] and 28 U.S.C. § 1651.[4] (*Id.* at 2–3.) Specifically, the relief contemplated would enjoin and restrain Debtor-Appellant and his agents and/or representatives from: (1) making further motions or filings in his case without prior written permission from the Bankruptcy Court; (2) filing any bankruptcy cases in any bankruptcy court (on behalf of Debtor-Appellant or any person or entity claiming to hold an interest in property from Debtor-Appellant's estate) during the pending of his bankruptcy suit before Chief Judge Morris and without prior written permission from the Bankruptcy Court; and (3) filing any pleading, motion, or other document seeking relief against the Trustee-Appellee or "any of her professionals" in state or federal court without prior written permission from the Bankruptcy Court. (*Id.* at 3.) Chief Judge Morris also issued a TRO, enjoining the same, pending the hearing on the motion.

---

[2] 11 U.S.C. § 105(a) states:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[3] 11 U.S.C. § 362(a)(3) states:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

[4] 28 U.S.C. § 1651 states:

> (1) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
> (2) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

3

### B. The June 3, 2019 Preliminary Injunction and Restraining Order and Related Relief.

On May 16, 2019, the Bankruptcy Court scheduled a hearing on the preliminary injunction in conjunction with a pretrial conference on the Adversary Proceeding. (*See* Adversary Proceeding, ECF No. 23 at 2.) The Bankruptcy Court found that the Debtor-Appellant filed a Chapter 13 bankruptcy case in the District of New Jersey on May 9, 2019, "in complete derogation and violation of the TRO." (*Id.* at 2.) Additionally, the Bankruptcy Court considered the multiple proceedings that Debtor-Appellant had previously filed in other Districts, including in the District of Connecticut, and found that the Debtor-Appellant "is a vexatious litigant" who has "purposely filed frivolous and vexatious motions and pleadings in various bankruptcy cases in addition to proceedings against the Trustee's attorney in the state court." The Bankruptcy Court determined that Debtor-Appellant's "vexatious conduct has interfered with the administration of this bankruptcy case," concluding that "unless the Debtor is restrained and enjoined from filing motions, pleadings and/or taking any actions before this Court or other bankruptcy courts without prior approval from this Court, the Debtor will continue to engage in vexatious litigation for no reason other than to cause additional and unnecessary legal fees and with no other valid purpose." (*Id.* at 3.) The Bankruptcy Court therefore issued the injunction against Debtor-Appellant. (*Id.* at 3–4.)

### C. The July 22, 2019 TRO and Turnover Directive.

On July 18, 2019, after multiple attempts to request and obtain documents from the Debtor-Appellant, the Trustee-Appellee moved, by order to show cause for a TRO, as well as an order compelling the production of certain documentation and information within Debtor-Appellant's possession, including those which contained information about business transaction and rents of certain properties he owned. (*See id.* at 1–2.) On July 22, 2019, the

Bankruptcy Court issued an order that, *inter alia*, temporarily restrained and enjoined Appellant and his representatives and agents "from withdrawing or transferring any funds from any bank or financial accounts in which the Debtor has an interest" and temporarily restrained the funds in certain bank accounts held in the name of the Debtor solely or jointly with any other persons. (*Id.* at 4–5.) Additionally, the Bankruptcy Court issued a turnover directive requiring that Debtor-Appellant turn over rents and certain documentation relating to its Estate. (*Id.* at 4.) This directive was based, at least in part, on the Bankruptcy Court's review of the Trustee-Appellee's argument that the Debtor-Appellant had stolen post-petition rents. (*Id.* at 7–11.)

## II. LEGAL STANDARD

### A. Review of Bankruptcy Court Orders.

This Court has jurisdiction over appeals from bankruptcy court orders pursuant to 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a). Rule 8013 of the Federal Rules of Bankruptcy Procedures provides that a district court conducting appellate review may "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

When considering an appeal from an order of the Bankruptcy Court, this Court reviews the Bankruptcy Court's findings of law *de novo* and its findings of fact for clear error. *See In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003). A bankruptcy court abuses its discretion if it "bases its decision on an erroneous view of the law or clearly erroneous factual findings, or if it commits a 'clear error of judgment' based on 'all the appropriate factors.'" *In re Prisco*, 574 F.App'x 19, 19 (2d Cir. 2014) (quoting *In re Blaise*, 219 B.R. 946, 950 (2d Cir. 1998)). Accordingly, in reviewing Chief Judge Morris's determinations for abuse of discretion, this Court must review her "conclusions of law *de novo* and . . . findings of fact for clear error." *In re AMR Corp.*, 764 F. App'x 88, 89 (2d Cir. 2019). Clear error is present only when "upon review of the entire record,

5

[the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted). In reviewing the bankruptcy court's determinations, this Court may rely upon any ground supported by the record—it need not rely solely upon those relied upon by the Bankruptcy Court. *See Krakowski v. Am. Airlines, Inc.*, 610 B.R. 714, 720 (S.D.N.Y. 2019); *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010).

### B. *Pro Se* Plaintiffs.

Debtor-Appellant appeals *pro se*. Pleadings of a *pro se* litigant "must be construed liberally . . . to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureu of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted); *see also In re Refco Inc.*, No. 07 Civ. 10708 (RJS), 2011 WL 3586416, at *1 (S.D.N.Y. Aug. 2, 2011) (construing *pro se* bankruptcy appellant's motions liberally to satisfy procedural requirements). As such, courts must grant unrepresented parties "extra leeway in meeting the procedural rules governing litigation . . . ." *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F. 3d 90, 96 (2d Cir. 1993)); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (noting that a *pro se* litigant's rights "should not be impaired by harsh application of technical rules").

### III.   CHIEF JUDGE MORRIS'S ORDERS ARE AFFIRMED.

### A. The March Order.

Debtor-Appellant argues that the Bankruptcy Court abused its discretion in preliminarily enjoining him from making certain filings without the Bankruptcy Court's prior approval. (Appeal 1 Debtor-Appellant's Br. ¶ 32.) A bankruptcy court has the authority to impose sanctions and place limitations on a litigant who has abused the judicial process. *See, e.g.*, *In re Plumeri*, 434 B.R. 315, 327–328 (S.D.N.Y. 2010) (collecting cases). The Second Circuit has consistently held that federal courts have the power and obligation to limit individuals who historically file

frivolous and vexatious claims, and who harass others with these claims. *See, e.g., Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (*per curiam*) (internal citations omitted) (holding that a court may impose an injunction when a "plaintiff abuse[s] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings"); *see also In re Martin-Trigona,* 737 F.2d 1254, 1261 (2d Cir. 1984) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."), *injunction made permanent,* 795 F.2d 9, 12 (2d Cir. 1986), *modified sub nom. Martin-Trigona v. Cohen,* 876 F.2d 307, 308 (2d Cir. 1989).

Here, and as outlined in the March Order, Debtor-Appellant has demonstrated a history of vexatious, harassing, and duplicative lawsuits. Indeed, Debtor-Appellant appears to have brought various litigations for the direct purpose of impeding the Trustee-Appellee's role in selling assets. Further, and as Trustee-Appellee correctly notes, Debtor-Appellant's litigation has "caused needless expense to the estates in certain of the nine other bankruptcy cases he has caused to be filed," as well as to the Bankruptcy Court itself. (Appeal 1, Br. For Appellee ("Appeal 1 Trustee-Appellee's Br."), ECF No. 11 at 26.) Moreover, it is notable that Chief Judge Morris did not enjoin from Debtor-Appellant from filing *any* lawsuits, but simply from filing lawsuits without prior permission to ensure that they were *not* duplicative or vexatious.

All of Debtor-Appellant's arguments against the March Order are misguided. For example, Debtor-Appellant claims that Chief Judge Morris misrepresented him as a serial filer. (Appeal 1 Debtor-Appellant's Br. ¶ 36.) Even putting aside the *four other* appeals that Debtor-Appellant has brought in this Court, (*see* 18 Civ. 8769 (GBD); 18 Civ. 11420 (GBD); 19 Civ. 314 (GBD); 20 Civ. 3080 (RA)), the Bankruptcy Court has considered the numerous cases and appeals he has filed in various courts. Further, Trustee-Appellee outlines the various unsubstantiated and serious

allegations that Debtor-Appellant has made and continues to make against her and her counsel. (*See* Appeal 1, Trustee-Appellee's Br. at 29–30.) Debtor-Appellant therefore sets forth no support for his claim that Chief Judge Morris abused her discretion or acted "with bias and prejudice" against Debtor-Appellant, and this Court finds no evidence in the record that would support this conclusion.

### B. The June Order.

Debtor-Appellant also appeals the June Order, though he does not assert any specific arguments in favor of this appeal. (*See* Appeal 1 Debtor-Appellant's Br. at 23.) TROs are typically not appealable, as they are interlocutory and not considered a final judgment. *See Romer v. Green Point Sav. Bank*, 27 F.3d 12, 15 (2d Cir. 1994). "However, when a grant or denial of a TRO 'might have a serious, perhaps irreparable, consequence, and . . . can be effectually challenged only by immediate appeal,' [a court] may exercise appellate jurisdiction." *Id.* (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981)). Here, Debtor-Appellant has not demonstrated that the issuance of the TRO is serious enough to qualify as an exception to the rule that interlocutory orders are typically not appealable. Considering all the facts leading up to the issuance of the TRO, as well as the fact that Debtor-Appellant has not asserted any arguments in support of his appeal of this order, there is no evidence that Chief Judge Morris abused her discretion in this matter.

### C. The July Order.

As described above, the July Order is made up of (1) a TRO and (2) a turnover order by the Bankruptcy Court. Similarly to the June Order, this TRO cannot be appealed as it is not a final judgment and is interlocutory. *See Romer*, 27 F.3d at 15. Additionally, Debtor-Appellant has not set forth any arguments or evidence to demonstrate that the issuance of the TRO was sufficiently serious for this Court to exercise appellate jurisdiction. As to the turnover directive, the Trustee-

Appellee is correct that it was "appropriate and necessary" for the purpose of maintaining and protecting the estate pending the suit. In this case, Chief Judge Morris acted properly in issuing a turnover directive. Indeed, full disclosure is necessary in a suit such as Debtor-Appellant's, and the record demonstrates that he actively took steps to avoid disclosure of certain documents, despite the multiple requests made for certain information. (*See* Adversary Proceeding, Affirmation in Supp. of Trustee's *Ex Parte* Mot. for Order Pursuant to 11 U.S.C. §§ 105(a), 362(a), 521(a)(4) and 542(a), ECF No. 37-1, ¶¶ 6(1)(b); 15.) Debtor-Appellant has not provided evidence to demonstrate that he complied with any of these requests. Considering this and Debtor-Appellant's other behavior throughout the suit, it was not improper for Chief Judge Morris to ensure that relevant documentation and information would be made accessible and available to the Trustee-Appellee. Moreover, as Trustee-Appellee accurately states, Debtor-Appellant offers no valid argument for why this Court should overturn the Bankruptcy Court's decision regarding the turnover order. Indeed, Debtor-Appellant raises arguments that this Court previously addressed in his other appeals, (*see* Appeal 2, Debtor/Appellant's Opening Br., ECF No. X, ¶¶ 32–38), and argues that Chief Judge Morris "prosecuted from the bench, unlawfully, with prejudice and bias against a pro [se] litigant with virtually no opposition from the parties." (*Id.* ¶ 33.) Being a *pro se* litigant, however, does not mean that a court may overlook one's obligation to comply with court directives and procedural obligations. Debtor-Appellant was given several opportunities to comply but did not. Therefore, Debtor-Appellant has not demonstrated that Chief Judge Morris abused her discretion in issuing the July Order.

## IV. CONCLUSION

Chief Judge Morris's decisions are AFFIRMED. The Clerk of Court is directed to close the motions at 19 Civ. 5944 (GBD) and 19 Civ. 7091 (GBD).

Dated: New York, New York
       September 15, 2020

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge